575 N.E.2d 22 (1991)
In the matter of P.J., a Child Alleged to Be a Child in Need of Services.
No. 02A03-9009-CV-394.
Court of Appeals of Indiana, Third District.
July 16, 1991.
*23 Philip H. Larmore, Clifford, Larmore & Assoc., Fort Wayne, for appellant.
Thomas P. Boyer, Lebamoff Law Offices, Fort Wayne, for appellee Dept. of Public Welfare of Allen County, Ind.
James M. More, Bloom, Bloom, More & Miller, Fort Wayne, Guardian Ad Litem for P.J.
GARRARD, Judge.
This appeal is from an injunction granted by the juvenile court forbidding the Northwest Allen County Schools from expelling a CHINS child from public high school. It focuses upon the tension existing between the juvenile code and disciplinary authority granted school systems over their pupils.
On February 6, 1990, officials at Carroll high school discovered that P.J. had been drinking alcohol on school property. At the time she was fifteen years old and a sophomore at Carroll. In the discussion that followed she revealed that she was a victim of child molesting. These events triggered the two contemporaneous courses of action resulting in the injunction now appealed from.
The school suspended her from school and the principal filed a request to expel her for the balance of the semester. P.J. timely appealed the proposed expulsion and following an administrative hearing the hearing officer recommended expulsion. The acting superintendent issued notice of expulsion, and P.J. gave appropriate notice of her intent to appeal. On March 6 the school board conducted the appeal hearing.
Meanwhile, the matter had been reported to the welfare department and it filed a petition alleging P.J. to be a child in need of services as the victim of a sex offense. On March 12 the juvenile court determined that P.J. was a child in need of services and on March 19 entered its dispositional order which, inter alia, required the mother to ensure the child's regular attendance in school and required P.J. to attend school regularly and maintain passing grades.
Aware of the impending collision of these courses, on March 9 the welfare department secured a temporary restraining order returning P.J. to school and petitioned for an injunction. Hearing on the temporary injunction was held on March 20, which was after the school board had conducted its hearing but before it rendered its decision. By stipulation of the parties the record was left open to receive the report of that decision, and it was subsequently reported that on March 20 the school board rendered a decision to uphold the recommendation and determination that P.J. should be expelled through June 5, 1990. The juvenile court, however, granted a temporary injunction and, eventually a permanent injunction, precluding the schools from denying P.J. enrollment and continued attendance in her classes at Carroll High School, directing that they give her reasonable opportunity to make up the work missed while she was suspended and requiring that she be given her grades and credits for work completed.
The legal basis for the court's granting the injunction came from I.C. XX-X-X-XX which provides in pertinent part that,
[T]he juvenile court may, for good cause shown upon the record issue an injunction:
(1) to control the conduct of any person in relation to the child.
*24 Pursuant to I.C. XX-X-X-XX "person" means a human being, corporation, partnership, unincorporated association, or governmental entity.
The factual basis for entering the injunction as found by the court included the following pertinent findings: P.J. was unable to report the sexual molestation to a person in authority prior to February 6, 1990, due to her concern regarding the effect that the disclosure of this information would have on her mother, brother and father. The consumption of alcoholic beverages by P.J. on February 6, 1990, was directly related to and a result of her being a victim of sexual molestation. Such consumption was the means that she utilized to disclose the fact that she was the victim of sexual molestation. There was no evidence from which to conclude that her presence presented a continuing danger to persons or that she would disrupt regular academic procedure. Following her suspension, substantial efforts were made, without success, to enroll her in both private and public schools. P.J. would suffer irreparable injury by her continued expulsion. The applicable Carroll High School handbook does not mandate expulsion for consuming alcoholic beverages on school property; the only mandatory penalty therefor being a five day suspension.
The findings were supported by the evidence. Their crux came from the testimony of the Child Protective Services caseworker and, most particularly, from the testimony of Dr. Theresa Mihlbauer, a psychologist who specialized in treating children who are the victims of sexual abuse. The caseworker testified that sexually abused children frequently use an episode of outrageous behavior, such as drinking, as a catalyst to tell what has been happening to them. Dr. Mihlbauer testified that the disclosure of such sexual abuse is a major traumatic life event which necessitates much healing and recovery. Maintaining stability and continuation of normal developmental progress, such as schooling, living in the home and maintaining relationships with family and friends is highly recommended. Conversely, it was her opinion that P.J.'s continued expulsion from her high school could impair her ability to have intimacy with people, trust them, and to recover from the sexual abuse.
The schools do not dispute the factual premises upon which the injunctions were granted. Instead, the essence of their position is that the determination of whether P.J. was to remain in school or not is a matter exclusively within their province and for their determination, subject only to the judicial review provided by the legislature in I.C. 20-8.1-5-1 et seq., and specifically, I.C. 20-8.1-5-11. Accordingly, they present two jurisdictional contentions. First, they assert the juvenile court lacked jurisdiction to grant injunctive relief because P.J. failed to first exhaust her administrative remedies. Secondly, they contend that in any event the court was precluded from exercising jurisdiction by virtue of that portion of I.C. 20-8.1-5-15 which states:
No decision of any court of the state of Indiana shall override a suspension, exclusion or expulsion made as provided under this chapter except by way of the appeal provided under section 11 of this chapter.
We need not tarry on the first argument. Bypassing the question of whether the welfare department was a real party in interest who had no administrative remedy (welfare departments are not within those granted a right of administrative review by I.C. 20-8.1-5-11), we observe that the trial court expressly determined that P.J. would suffer irreparable injury if not permitted to return to school at that time. The finding was supported by the psychologist's opinion that because of the traumatic nature of a disclosure of sexual molesting, the period immediately following the disclosure is critical. Thus, it was reasonable to conclude that the asserted harm would occur regardless of the outcome of the administrative review process. Our decisions have long recognized that the doctrine concerning the failure to exhaust administrative remedies is subject to exceptions, one of which is that the party in question will suffer irreparable injury if strict compliance is required. See, e.g. *25 South Bend Federation of Teachers v. National Ed. Ass'n (1979), 180 Ind. App. 299, 309, 389 N.E.2d 23, 30 and cases cited therein. Accordingly, P.J. was not barred by failure to exhaust administrative remedies.
The crux of the case arises from the other argument because of the facial conflict between I.C. 20-8.1-5-15 and the provisions of the juvenile code giving the juvenile court exclusive jurisdiction of CHINS children (I.C. 31-6-2-1.1) and the authority to control by injunction the conduct of any person, corporation, governmental entity, etc. in relation to the child. I.C. XX-X-X-XX, XX-X-X-XX.
We first note that the juvenile code provisions were enacted in 1978 and after, while the school discipline provisions date from 1973. The former, therefore, represent the most recent legislative expression. See, State ex rel. Sendak v. Marion Co. Sup. Ct. (1978), 268 Ind. 3, 373 N.E.2d 145.
Nevertheless, we recognize that it is our duty to reconcile the acts and give effect to both to the extent possible. Wright v. Gettinger (1981) Ind., 428 N.E.2d 1212, 1219.
We think this can best be done by recognizing the legislative concern for that small number of school age children found to be delinquent children or children in need of services and the public interest in providing for their protection and welfare in conjunction with that of society around them.
In general application the pupil discipline statute controls the conduct of children in the public schools and courts are not free to override disciplinary decisions made in accordance with the act except by way of the administrative appeal provided for therein. On the other hand, where the juvenile court has acquired jurisdiction of a child and determined him, or her, to be a child in need of services, and upon hearing with notice and for good cause shown as required by I.C. XX-X-X-XX has determined that the child will suffer irreparable injury if exhaustion of administrative remedies is required, the juvenile court may properly determine that a protective order is necessary and determine appropriate injunctive relief.
Such a construction does not impair the authority the legislature intended to confer upon the schools by opening the door to every parent or child dissatisfied with a disciplinary decision. Moreover, we are confident in our juvenile courts and judges and their reluctance to interfere with school disciplinary matters except upon showing of good cause and necessity. At the same time we would be remiss to ignore the reluctance of school officials to make special exceptions in disciplinary matters because of special circumstances affecting a particular child. The record in the instant proceeding sadly supports that observation.
Nor do we believe recognizing the special authority of juvenile courts must operate to impair the ability of the schools to maintain discipline and decorum. Even in those rare instances where an order such as that before us has been found necessary, the juvenile court remains open to the schools for consideration of a petition to dissolve or modify injunctive relief where subsequent actions by the child make such action necessary.
Accordingly, we affirm the decision of the trial court.
Affirmed.
HOFFMAN, P.J., concurs.
BAKER, J., dissents and files separate opinion.
BAKER, Judge, dissenting.
I respectfully dissent. I cannot countenance this inappropriate extension of the judiciary's role into the province of school officials.
As the majority has correctly stated, resolution of the dispute turns on the construction of the competing provisions of IND. CODE 20-8.1-5-15 and IND. CODE 31-6-7-14. When the General Assembly enacted IND. CODE 20-8.1-5-15 in 1973, it demonstrated its unequivocal intent to allow school officials the final determination in pupil discipline proceedings, subject to judicial review only as allowed by statute. *26 In my view, the subsequent enactment of IND. CODE 31-6-7-14 in 1978 had no effect on the nature and type of judicial review available in pupil discipline proceedings.
In pertinent part, IND. CODE 20-8.1-5-15 provides:

No decision of any court of the state of Indiana shall override a suspension, exclusion or expulsion made as provided under this chapter except by way of the appeal provided under section 11 of this chapter.
(Emphasis added). The review process under section 11 requires the student to exhaust administrative remedies by obtaining a determination of the local school board, and:
[a]t any time within thirty (30) days thereafter, the student may appeal such determination to the circuit or superior court in the county where the principal office of the governing body is located. Such appeal shall be initiated by the filing of a complaint which shall be sufficient if it alleges in general terms that the governing body acted arbitrarily, capriciously, without substantial evidence, or unlawfully.
IND. CODE 20-8.1-5-11.[1] Despite this clear and unambiguous language, the majority has upheld the trial court's injunction forbidding Northwest Allen County Schools from expelling P.J. because IND. CODE 31-6-7-14 allows juvenile courts to issue injunctions "to control the conduct of any person in relation to the [CHINS] child." IND. CODE 31-6-7-14(a)(1). I disagree.
In asserting the primacy of the juvenile court's authority, the majority relies on State ex rel. Sendak v. Marion County Superior Court (1978), 268 Ind. 3, 373 N.E.2d 145, for the proposition that the most recent legislative expression on a subject is to be given more weight than older legislative expressions. I find reliance on Sendak misplaced because the rule that the more recent expression controls is applicable only if two statutes covering the same general subject matter cannot be harmonized. Southwest Forest Indus., Dunlap Div. v. Firth (1982), Ind. App., 435 N.E.2d 295. The court must attempt to harmonize two conflicting statutes before applying any other rule of statutory construction. Marion Co. Sheriff's Merit Bd. v. Peoples Broadcasting Corp. (1989), Ind., 547 N.E.2d 235, 237.
A number of years ago, Judge Garrard, speaking for a unanimous court which included Judge Hoffman, enunciated the methodology to be employed in the present situation:
[A] later statute covering in general terms the same subject classified specifically in an earlier statute will be construed in harmony with the earlier statute's qualifications.
Johnson v. LaPorte Bank & Trust Co. (1984), Ind. App., 470 N.E.2d 350, 355, trans. denied (citation omitted). Here, the 1978 juvenile court statute is more general than the 1973 disciplinary review statute which makes reference to a specific appeal process, and must accordingly be construed in harmony with the 1973 statute's qualifications.[2] This means the language in the 1978 statute giving the juvenile court authority to issue injunctions against any person is subject to the rule that neither the juvenile court nor any other Indiana court may interfere with a school board's decision to suspend, exclude, or expel a student. In all other respects, the authority of the juvenile court over a CHINS child is plenary, but the decision to suspend, exclude, *27 or expel lies solely with the school board and may be appealed only as provided by IND. CODE 20-8.1-5-11.[3]
My opinion is also founded upon legislative intent, the primary factor in the construction of statutes. Spaulding v. International Bakers Services, Inc. (1990), Ind., 550 N.E.2d 307. "[W]e must presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals." Detterline v. Bonaventura (1984), Ind. App., 465 N.E.2d 215, 218, trans. denied. A clear and unmistakable policy underlies Article 8.1 of Title 20 of the Indiana Code  to vest authority and responsibility for the well-ordered operation of public schools in local school officials, not in the courts. See IND. CODE 20-8.1-5-1; 20-8.1-5-2. If we attempt to usurp the authority, we will also be burdened with the responsibility, and it is a responsibility we are ill-equipped to undertake.
The decision to suspend, exclude, or expel is a discretionary one, and even before the adoption of IND. CODE 20-8.1-5-2, our supreme court recognized that students have a right to judicial review for the arbitrary, capricious, or otherwise illegal discretionary acts of school officials. State ex rel. Smitherman v. Davis (1958), 238 Ind. 563, 569-70, 151 N.E.2d 495, 498.[4] It does not follow, however, that when the legislature provides a specific method of review for school officials' discretionary acts, the courts have additional authority to intervene.
The legislature's authority over public education is a constitutional mandate, IND. CONST. art. VIII, § 1, and we in the other branches of government should respect the legislature's discretion absent a clear constitutional violation. Fort Wayne Community Schools v. State ex rel. New Haven Pub. Schools (1958), 240 Ind. 57, 60, 159 N.E.2d 708, 709. "Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems ..." Epperson v. Arkansas (1968), 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228, 234. I find it impossible to believe that the legislature intended to provide a comprehensive mechanism for student disciplinary proceedings and review in 1973, only to eviscerate that mechanism in 1978 by giving the juvenile courts control over those same disciplinary proceedings.
In dissenting, I do not mean to imply that I am unsympathetic to the trial court's determination of P.J.'s plight as a victim of sexual molestation by her father. Rather, I merely wish to point out that the legislature has created an avenue of redress which wrongfully suspended, excluded, or expelled students should follow. The schools belong to our communities, not, except as the legislature provides or the state or federal constitution mandates, to our courts.
*28 I dissent and vote to reverse the trial court with the instruction that the injunction be dissolved.
NOTES
[1] In my opinion, the juvenile court never has authority to entertain a petition to enjoin a decision to suspend, exclude, or expel, regardless of whether the child or the child's representative has exhausted administrative remedies.

Here, it is undisputed that P.J., in fact, did not exhaust her administrative remedies. Like the majority, however, I believe the likelihood of P.J. suffering irreparable injury as a result of the molestation and the subsequent loss of a safe and secure school environment, excuses her failure to exhaust. In such a situation, P.J. or her representative might have successfully filed an early petition under the proper review procedures of IND. CODE 20-8.1-5-11.
[2] In my opinion IND. CODE 20-8.1-5-15 and IND. CODE 31-6-7-14 deal with the same general subject matter, i.e., the judicial role in the discipline of minors.
[3] My conclusion is reinforced by the General Assembly's substantial revision to I.C. 20-8.1-5-11 in 1985. When the legislature enacts a statute, we presume it is aware of existing statutes on the same subject. Pea v. Pea (1986), Ind. App., 498 N.E.2d 110, trans. denied. In this case, then, we must presume the 1985 General Assembly knew of the facial contrast between I.C. 20-8.1-5-15 and I.C. XX-X-X-XX, and did nothing to change the review procedures for student disciplinary proceedings mandated by the former, despite the existence of the latter.
[4] Stated differently, we review school officials' decisions only for arbitrariness and capriciousness because:

the disputes which arise in the day-to-day operations of our public schools cannot as a general rule be resolved by ... judges, who necessarily must view them after the fact, from a remote point of view, and without direct responsibility for the immediate and practical consequences of the determinations.
Dodd v. Rambis (S.D.Ind. 1981), 535 F. Supp. 23, 31 (citation omitted). The Dodd court's logic is inescapable and in accord with the rationale underlying our standard of review for school officials' decisions under I.C. 20-8.1-5-11. Because we rely on the expertise of administrative agencies, we show great deference to their actions undertaken within the scope of their discretion. Day, et al. v. Ryan (1990), Ind. App., 560 N.E.2d 77, 82, n. 5.
In contrast, the juvenile court is empowered to issue injunctions on "good cause shown," I.C. XX-X-X-XX(a), a lower threshold of intervention than is required under the arbitrary and capricious standard.