666 N.E.2d 80 (1996)
In the Matter of H.L.K., a Child Alleged to be a Delinquent Child.
WEST CLARK COMMUNITY SCHOOLS, Appellant-Respondent,
v.
H.L.K. and Clark Superior Court No. 1 Probation Department, Appellees-Petitioners.
No. 10A01-9512-JV-406.
Court of Appeals of Indiana.
May 15, 1996.
*81 James A. Lang, Jeffersonville, for appellant.
Samuel T. Green, Jeffersonville, for appellees.

OPINION
BAKER, Judge.
Today we revisit this court's decision in Matter of P.J., a Child Alleged to be a Child in Need of Services, 575 N.E.2d 22 (Ind.Ct. App.1991), where we discussed the tension between the exclusive authority of the juvenile court over delinquent children and the exclusive authority of a school corporation over suspensions and expulsions of students. On appeal, appellant-respondent West Clark Community Schools (School Corporation) challenges the juvenile court's grant of a permanent injunction prohibiting it from expelling appellee-petitioner H.L.K. Specifically, the School Corporation argues: 1) the juvenile court lacked personal jurisdiction over the School Corporation because the School Corporation did not receive a summons or notice of the injunction proceedings *82 and 2) the juvenile court did not have the statutory authority to enjoin the School Corporation from expelling a student.

FACTS
On May 19, 1995, at the Borden Junior/High School, H.L.K. placed rat poison in the soft drink of a fellow student who had allegedly been sexually harassing her for approximately one and one-half years. On May 21, 1995, Judge Jacobi of the Clark Superior Court (juvenile court) signed an emergency detention order placing H.L.K. in the custody of the Clark County Youth Shelter. H.L.K. subsequently signed an admission to having committed a delinquent act, which, had she been an adult at the time, would have constituted Criminal Recklessness,[1] a Class D felony.
On June 9, 1995, the juvenile court held a dispositional hearing, during which H.L.K. admitted that she had committed a delinquent act. The court ordered H.L.K. to be transferred to the custody of the Department of Correction but then suspended that order and placed H.L.K. in the custody of her aunt, Linda Jordan. Additionally, the court ordered her to serve one year of probation. The court further ordered the Probation Department to devise a plan of treatment and rehabilitation to ensure that H.L.K. did not commit future delinquent acts. As a condition of probation, the court ordered H.L.K. "to attend school regularly with no absences or tardies" and to "work to the best of your ability and conduct yourself according to the school policy." Record at 44-45.
While delinquency proceedings were occurring in the juvenile court, the School Corporation began taking steps to expel H.L.K. from school for the fall semester of the 1995-1996 school year. H.L.K. had been suspended from school since May 19, 1995, the date she placed the rat poison in the soft drink. On May 22, 1995, a hearing officer for the School Corporation notified H.L.K. that the principal of the school had requested she be expelled through January 2, 1996, which expulsion was to take effect on August 24, 1995. In response, H.L.K.'s guardian, Linda Jordan, filed a request on August 16, 1995, for the juvenile court to modify its dispositional order to require the School Corporation to admit H.L.K. as a student. On that same day, Robert Jones, the chief probation officer of the Clark Superior Court, filed a motion for an emergency injunctive order to prevent the School Corporation from expelling H.L.K.
On August 17, 1995, the School Corporation filed a motion to dismiss both Jordan's motion for modification of the juvenile court's dispositional order and Jones' motion for temporary injunctive relief. In support of its motion to dismiss, the School Corporation argued that the juvenile court did not have jurisdiction over the School Corporation because: 1) it had not received a summons or notice of the hearing and 2) H.L.K. had not exhausted the administrative remedies for appealing her expulsion. After holding a hearing on the three motions, the juvenile court granted Jones' motion for emergency injunctive relief. Specifically, the juvenile court prohibited the School Corporation from restricting H.L.K.'s school attendance.
Thereafter, on August 21, 1995, Jones filed a motion requesting that the court's temporary injunction become a permanent injunction restricting the School Corporation's ability to expel H.L.K. In support of its motion, Jones argued that H.L.K. would suffer irreparable injury if she were expelled. The School Corporation again filed a motion to dismiss alleging: 1) the court lacked subject matter jurisdiction because the School Corporation had not been named as a party and had not received a summons or notice of the injunctive action, 2) the court lacked subject matter jurisdiction because H.L.K. had not exhausted her administrative remedies, and 3) the court did not have the statutory authority to order a school to admit a student. Following an evidentiary hearing, the juvenile court issued a permanent injunction on September 8, 1995, prohibiting the School Corporation from expelling H.L.K.

DISCUSSION AND DECISION

I. Service
The School Corporation first argues the juvenile court lacked personal jurisdiction *83 over it because it was not served with a summons or notice of the injunction proceedings. The juvenile court issued the permanent injunction pursuant to IND.CODE § 31-6-7-14, which provides that the juvenile court is required to give notice to any person whose conduct will be regulated by an order of the juvenile court to appear at a specified date and time. In the instant case, the record reveals that the School Corporation was served with a copy of Jones' request for a permanent injunction. R. at 75-76. However, the record does not contain notice by the juvenile court of the date and time of its hearing on Jones' petition. Thus, the School Corporation did not receive proper notice pursuant to I.C. § 31-6-7-14.
The School Corporation, however, has waived any defect in the service of process. During the permanent injunction hearing, the juvenile court discussed the service of process issue. The court offered to continue the hearing until any defects in the service could be remedied. R. at 240. The School Corporation declined the juvenile court's offer. At that point, the School Corporation waived any defects in service and submitted to the jurisdiction of the juvenile court. Furthermore, the School Corporation proceeded to present witnesses and testimony on the merits of the motion for permanent injunction. Thus, the juvenile court had personal jurisdiction over the School Corporation in the permanent injunction proceedings. See City of New Haven v. Indiana Suburban Sewers, 257 Ind. 609, 612, 277 N.E.2d 361, 362 (Ind.1972) (we will disregard technical requirements of notice if party complaining of improper notice had actual notice and participated in proceedings).

II. Permanent Injunction
Next, the School Corporation argues that the juvenile court was without the statutory authority to issue a permanent injunction restricting the School Corporation's ability to expel a student. Initially, we note that the School Corporation is challenging the permanent injunction, which nullified H.L.K.'s expulsion for the first semester of the 1995-1996 school year. H.L.K. has now completed this semester without incident. As a result, the School Corporation's appeal is moot. See Bremen Public Schools v. Varab, 496 N.E.2d 125, 127 (Ind.Ct.App.1986) (appeal of expulsion became moot after completion of term). However, even when an appeal is moot, we can review issues under a public interest exception which may be invoked when the case involves a question of great public importance which is likely to recur. City of Evansville v. Zirkelbach, 662 N.E.2d 651, 652-53 (Ind.Ct.App.1996). Here, we believe that the issues raised by the School Corporation are of great public importance and are likely to recur. Thus, we shall examine the issue even though no practical remedy is available.
In the instant case, the juvenile court issued the permanent injunction pursuant to IND.CODE § 31-6-2-1.1, which grants the juvenile court exclusive original jurisdiction over proceedings in which a child is alleged to be a delinquent child. Specifically, the juvenile court acted according to IND.CODE § 31-6-7-14, which provides:
(a) Upon a juvenile court's motion or upon the motion of a child's parent, guardian, custodian, or guardian ad litem, a probation officer, a caseworker, the prosecutor, the attorney for the county office of family and children, or any person providing services to the child or the child's parent, guardian, or custodian, the juvenile court may issue an order:
(1) to control the conduct of any person in relation to the child;

. . . . .
(d) The court shall issue an order under subsection (a) if the court finds that good cause to issue the order is shown upon the record....
The juvenile court found that good cause existed to issue an injunction against the School Corporation because irreparable harm would result to H.L.K. if she were expelled and because the School Corporation failed to provide the court with a reasonable and less restrictive alternative that would balance the interests of the juvenile and those of the school. R. at 86.
On appeal, the School Corporation argues that despite the language of I.C. § 31-6-2-1.1 *84 granting exclusive original jurisdiction to the juvenile courts, the juvenile court did not have the authority to grant such an injunction against a school corporation because Indiana's Pupil Discipline Statute,[2] which gives a school corporation the exclusive authority to expel students, precludes judicial review of expulsions except in accordance with the statute. Further, the School Corporation contends that recent amendments to the Pupil Discipline Statute demonstrate the legislature's intent to restrict the juvenile court's ability to review school corporation decisions.
This court recently addressed the conflict between the exclusive authority of the juvenile court over children alleged to be delinquents and the exclusive right of a school corporation to expel students in Matter of P.J., 575 N.E.2d 22 (Ind.Ct.App.1991), to which this author dissented. In Matter of P.J., the juvenile court issued an injunction prohibiting a school corporation from expelling a student who had been determined to be a child in need of services (CHINS) for drinking alcohol on school property. The school corporation appealed, claiming that the language of I.C. § 20-8.1-5-15 precluded the juvenile court from exercising its jurisdiction to enter an injunction. That language provided:
No decision of any court of the state of Indiana shall override a suspension, exclusion or expulsion made as provided under this chapter except by way of the appeal provided under section 11 of this chapter.
I.C. § 20-8.1-5-15. The appeal provisions in I.C. § 20-8.1-5-11 require a student to file an appeal with the governing body of a school corporation within 30 days after a hearing on the student's expulsion, and thereafter, to file an appeal with the trial court within 30 days after the governing body's decision. An appeal under I.C. § 20-8.1-5-11 is limited to a determination of whether the school corporation acted arbitrarily, capriciously, without substantial evidence, or unlawfully. In Matter of P. J., the school corporation's argument continued that because the student did not exhaust her administrative remedies by following the appeal provisions set out in I.C. § 20-8.1-5-11, I.C. § 20-8.1-5-15 precluded the juvenile court from acquiring jurisdiction to grant the injunction.
In upholding the juvenile court's authority to grant the injunction, this court held that I.C. §§ 31-6-2-1.1 and 31-6-7-14, as the more recent legislative expressions, were to be given priority over I.C. § 20-8.1-5-11.[3] As a result, the majority held:
In general application the pupil discipline statute controls the conduct of children in the public schools and courts are not free to override disciplinary decisions made in accordance with the act except by way of the administrative appeal provided for therein. On the other hand, where the juvenile court has acquired jurisdiction of a child and determined him, or her, to be a child in need of services, and upon hearing with notice and for good cause shown as required by I.C. § 31-6-7-14 has determined that the child will suffer irreparable injury if exhaustion of administrative remedies is required, the juvenile court may properly determine that a protective order is necessary and determine appropriate injunctive relief.
Id. at 25. Thus, the majority held that the juvenile court had the authority to issue an injunction prior to the juvenile's exhaustion of the available administrative remedies for appealing the school corporation's decision. In a dissenting opinion, this author found that the two conflicting statutory provisions could be harmonized, rather than refusing to apply one statute as the majority found, by giving priority to the Pupil Discipline Statute rather than to the juvenile code. Specifically, I proposed to allow the juvenile court to review the actions of the school corporation, but only in accordance with the appeal provisions of the Pupil Discipline Statute. Id. at 26-27.
*85 Notwithstanding my dissent in Matter of P.J., the legislature repealed and replaced the Pupil Discipline Statute, effective July 1, 1995. Because H.L.K.'s expulsion became effective in August of 1995 and because the petition for permanent injunction was filed in August of 1995, we will apply the amended version of the Pupil Discipline Statute. While the former version of the statute allowed the court to review actions of school corporations to determine whether they acted arbitrarily, capriciously, without substantial evidence or unlawfully, I.C. § 20-8.1-5-11(d), the amended statute provides that the school corporation's decision may only be reviewed to determine whether it acted in accordance with the procedures set forth by the statute. I.C. § 20-8.1-5.1-15. The effect of this amendment is to further limit the scope of judicial review of school corporation decisions relating to student expulsion. Because we assume the legislature is mindful of court decisions and existing law, see Pea v. Pea, 498 N.E.2d 110 (Ind.Ct.App.1986), trans. denied, we interpret this change to mean that the legislature intended to overrule Matter of P.J. and to limit the juvenile court's ability to interfere with school corporation decisions. As a result, we find that the juvenile court did not have the authority to enjoin the School Corporation from expelling H.L.K.; rather, H.L.K. was required to file a petition for review of the procedures the School Corporation followed in making its decision to expel H.L.K. Because the juvenile court did not find, nor do the parties argue, that the School Corporation failed to follow the correct procedures, the issuance of the permanent injunction was erroneous.
Although our conclusion that the juvenile court did not have the authority to issue a permanent injunction would normally require us to reverse and remand for further proceedings, having already determined that the issue in this case is moot, it is not necessary for us to do so here.
ROBERTSON, J., concurs.
STATON, J., dissents with separate opinion.
STATON, Judge, dissenting.
I dissent from the Majority Opinion for these reasons:
1. It utterly destroys the remedial ability of the juvenile court to deal with critical problems requiring the cooperation of others by an order of the court.
2. The juvenile court obtained jurisdiction during the disciplinary proceeding of the school and before any determination. The juvenile court had jurisdiction to issue the injunction.
3. The Majority has failed to harmonize the applicable statutes which reflect the intent of the legislature. IND.CODE § 20-8.1-5.1-15 (Supp.1995) and IND. CODE § 31-6-7-14 (Supp.1995). If the Majority had done so, they would have arrived at the opposite result.
When analyzing statutes, this court has followed a rule of construction to harmonize statutes whenever possible. Where two statutes or two sets of statutes are apparently inconsistent in some respects and yet can be rationalized to give effect to both, it is this court's duty to do so. Robinson v. Zeedyk, 625 N.E.2d 1249, 1251 (Ind.Ct.App.1993), trans. denied. It is only when there is an irreconcilable conflict that we will interpret the legislature to mean that one statute must give way to another. Id.
IC XX-X-X-XX, entitled "Orders issued by juvenile court; hearings; emergency orders" provides, in pertinent part:
(a) Upon a juvenile court's motion or upon the motion of a child's parent, guardian, custodian, or guardian ad litem, a probation officer, a caseworker, the prosecutor, the attorney for the county office of family and children, or any person providing services to the child or the child's parent, guardian, or custodian, the juvenile court may issue an order:
(1) to control the conduct of any person[4] in relation to the child;

* * * * * *
*86 (d) The court shall issue an order under subsection (a) if the court finds that good cause to issue the order is shown upon the record. The court may also consider any other evidence presented in other proceedings or hearings authorized under this article concerning the child as the basis for the issuance of the order. The order must specifically describe in reasonable detail the acts or persons to be regulated under the order.
(Emphasis added).
Here, the juvenile court's jurisdiction was invoked when delinquency proceedings were commenced and in progress against H.L.K. The proceedings had not been concluded nor had any final determination been made by the school. The above statute was applicable and allowed the juvenile court to act to control the conduct of the School Corporation in relation to H.L.K. and issue the injunction. See IC XX-X-X-XX.
The Majority disregards the applicability of this statute and instead summarily determines that the juvenile court cannot interfere with a school corporation's disciplinary procedures based only upon the legislature's enactment of IC 20-8.1-5.1-15. The Majority's determination allows a school board's disciplinary action to interfere with and effectively undermine the juvenile court's function when the court has already acquired jurisdiction. Had the issue not been moot here, the school board's decision to expel H.L.K. would have forced the child to violate a condition of her probation requiring her to attend school. If taken to its logical conclusion, the Majority's decision permits a school board to nullify a juvenile court's delinquency adjudication.
In addition, a subsequent section was added to the Pupil Discipline Statute which provides:
An expulsion that has been upheld by a governing body continues in effect during judicial review under Section 15 of this chapter unless:
(1) the court grants a temporary restraining order under the Indiana Rules of Civil Procedure; and
(2) the school corporation was given the opportunity to appear at the hearing regarding the temporary restraining order.
See IND.CODE § 20-8.1-5.1-15.5 (Supp.1995). The enactment of this provision refutes the Majority's determination that the legislative intent behind IC 20-8.1-5.1-15 was to limit the scope of judicial review as IC 20-8.1-5.1-15.5 specifically contemplates that a court may issue a restraining order to enjoin an expulsion.
Today's decision should focus upon the cooperation between the statutes not simply to conclude that IC 20-8.1-5.1-15 meant "to limit the juvenile court's ability to interfere with school corporation decisions" even though the juvenile court had already acquired jurisdiction over the child. See op. at 85. This court's determination in Matter of P.J., 575 N.E.2d 22 (Ind.Ct.App.1991), emphasizes this point. There, the court noted that "courts are not free to override disciplinary decisions made in accordance with the [Pupil Discipline Act]". Id. at 25. However, where the juvenile court has acquired jurisdiction over the child and determined the child to be a child in need of services, then the juvenile court may determine appropriate injunctive relief. Id.
This rationale coupled with the enactment of IC 20-8.1-5.1-15.5 reflect the necessity of balancing the role of the school board in disciplining a child and the role of the juvenile court when its jurisdiction has been invoked in instances where the child has been adjudged a child in need of services as in Matter of P.J. or a juvenile delinquent as in the present case.
Because the juvenile court had jurisdiction over H.L.K. prior to the school board's disciplinary determination and because the juvenile court had the authority to issue an injunction pursuant to IC XX-X-X-XX, the trial court did not err when it issued the injunction here. The Majority's determination is erroneous.
For the above reasons, I dissent.
NOTES
[1] IND.CODE § 35-42-2-2.
[2] IND.CODE §§ 20-8.1-5.1-1 to 20-8.1-5.1-26, effective July 1, 1995. Formerly IND.CODE §§ 20-8.1-5-1 to 20-8.1-5-19, repealed by P.L. 131-1995, § 12.
[3] The juvenile code was enacted in 1978 while the Pupil Discipline Statute was enacted in 1973.
[4] IND.CODE § 31-6-1-24 (1993) defines person as "a human being, corporation, limited liability company, partnership, unincorporated association, or governmental entity."