Attorney for Appellant

James A. Lang

Jeffersonville, Indiana

Attorney for Appellee

Samuel T. Green

Jeffersonville, Indiana

IN THE

INDIANA SUPREME COURT

WEST CLARK COMMUNITY SCHOOLS,

Appellant (Respondent below),

v.

H.L.K.,

Appellee (Petitioner below).

)

) Supreme Court No.

) 10S01-9611-JV-706

)

) Court of Appeals No.

) 10A01-9512-JV-406

)

)

)

APPEAL FROM THE CLARK SUPERIOR COURT

The Honorable Jerome R. Jacobi, Judge

Cause No. 10D01-9505-JD-304

ON PETITION TO TRANSFER

SULLIVAN,  Justice.

We hold that a child challenging school discipline must do so by following the judicial review procedures of our state’s pupil discipline statute and not by seeking relief under the juvenile code.  However, we conclude that these judicial review procedures do not wholly oust juvenile courts of authority with respect to school corporations.

Background

Fourteen-year-old H.L.K. was adjudicated a delinquent child on June 26, 1995, for committing an act which, if committed by an adult, would have constituted a felony, 
to
 
wit
, criminal recklessness.
(footnote: 1)  In the proceedings related to this adjudication, there was evidence of the following.  On May 19, 1995, H.L.K. placed between 10 and 16 pellets of rat poison in a soft drink and gave it to an eighth grade classmate to drink.  H.L.K. did this to retaliate for the boy’s repeated unwanted touching of her breasts and buttocks over an extended period of time.  The idea to try to poison the boy was encouraged by one of H.L.K.’s classmates and another supplied the poison.  The boy had been warned in advance that the drink was contaminated and only laughed and refused to take it when H.L.K. offered it to him.

School authorities notified the police of the incident, and H.L.K. was taken into custody the same day.  After investigating the incident, the chief probation officer recommended that, in view of the circumstances that H.L.K. had been the victim of sexual harassment, that the poisoning idea had been encouraged by and poison itself had come from a classmate, and that the victim had advance knowledge of the poisoning attempt, H.L.K. be charged only with criminal recklessness and not attempted murder.  H.L.K. admitted the charge and, as noted above, was adjudicated delinquent on June 26, 1995.  In its dispositional order, the juvenile court committed H.L.K. to the Indiana Department of Correction, suspended the commitment and awarded custody to H.L.K.’s aunt, placed H.L.K. on probation, and ordered her to attend counseling and have no contact with the victim.  The conditions of probation included attending school regularly with no unexcused absences or tardiness.

On May 22, 1995, the school board notified H.L.K. of its intent to expel her from school though January 2, 1996.  However, in light of how few days remained in the school year and H.L.K.’s good academic record, she was promoted to ninth grade.  On August 24, 1995, the school board, after following the requisite procedures of Indiana’s pupil discipline statute,
(footnote: 2) expelled H.L.K. from school through January 2, 1996. 

Rather than pursue the judicial review procedures of the pupil discipline statute, H.L.K.’s aunt, as her legal guardian,
(footnote: 3) petitioned the court for a modification of its dispositional order to require the school corporation to admit H.L.K.  In addition, the chief probation officer filed motions for injunctive relief to prevent the school corporation from expelling H.L.K.

At the hearings on the requests for modification and injunction, the juvenile court heard testimony from the chief probation officer and a counselor who had been treating H.L.K., that H.L.K. very much wanted to return to school; that H.L.K. had never been in any legal or disciplinary difficulty before or after the attempted poisoning; that while in detention, H.L.K. had been helpful to the staff and served as a peacemaker between rival detainees; that H.L.K. had complied with the conditions of her probation in every respect, including never missing her weekly counseling sessions; that H.L.K. totally appreciated the wrongfulness of her conduct and now clearly recognized that she should have reported the boy’s sexual harassment of her to school authorities, rather than taking matters into her own hands; and that if H.L.K. could not attend her home high school, the only practical alternative for her to be in school that fall would be the Indiana Girls School.  

The school corporation was present and represented throughout the modification and injunction proceedings.  Its principal argument was that the juvenile court was without jurisdiction to countermand a pupil discipline decision.  In making this argument, the school corporation attempted to distinguish this case from 
Matter of P.J.
, 575 N.E.2d 22 (Ind. Ct. App.  1991), where the Court of Appeals had held that while in general courts are not free to override decisions made in conformity with the pupil discipline statute, where the juvenile court has acquired jurisdiction, the juvenile court may properly enjoin disciplinary decisions.  
Id.
 at 25.  The school board argued that 
Matter of P.J.
 involved a child adjudicated by the juvenile court to be a child in need of services (CHINS), not delinquent, and so 
Matter of P.J.
 should not control this delinquency case.

The court granted the modification requested by the guardian and the injunction requested by the probation officer, finding that H.L.K. would “suffer irreparable injury by continued expulsion” and that “such expulsion [was] unwarranted and potentially destructive to the successes achieved through [the] supervised period of probation and rehabilitation.”  Included in the court’s order was the following:

15. The Juvenile Court, although reluctant to interfere with school disciplinary matters, now finds that a showing of good cause and necessity exist in this case, particularly because the West Clark Community Schools wholly failed to provide the Court with a reasonable and less restrictive alternative that balances the interest of the juvenile and the school's interest to maintain disciplinary standards.

16. This Court remains open to the West Clark Community Schools for consideration of a Petition to dissolve or modify such Permanent Injunctive Relief in the event subsequent actions by the Juvenile makes such actions necessary.

(R. at 86-87.)
(footnote: 4)  The school corporation complied with the injunction but appealed the juvenile court’s order.  By the time the case was ready for decision by the Court of Appeals, H.L.K. had successfully completed the semester in question, rendering the school corporation’s appeal moot.  But finding the issue to be of “great public importance” and disagreeing with the result in 
Matter of P.J.
, the panel of the Court of Appeals proceeded to reverse the decision of the juvenile court.  
Matter of H.L.K.
, 666 N.E.2d 80 (Ind. Ct. App. 1996).  Judge Staton dissented.

Discussion

In its opinion in 
Matter of H.L.K.
, the majority of the Court of Appeals panel wrote:

While the former version of the [pupil discipline] statute [in effect at the time 
Matter of P.J.
 was decided] allowed the court to review actions of school corporations to determine whether they acted arbitrarily, capriciously, without substantial evidence or unlawfully, I.C. § 20-8.1-5-11(d), the amended statute [effective July 1, 1995,] provides that the school corporation’s decision may only be reviewed to determine whether it acted in accordance with the procedures set forth by the statute.  I.C. § 20-8.1-5.1-15.  The effect of this amendment is to further limit the scope of judicial review of school corporation decisions relating to student expulsion.  Because we assume the legislature is mindful of court decisions and existing law, [citation omitted], we interpret this change to mean that the legislature intended to overrule 
Matter of P.J.
 and to limit the juvenile court’s ability to interfere with school corporation decisions.  As a result, we find that the juvenile court did not have the authority to enjoin the School Corporation from expelling H.L.K.; rather, H.L.K. was required to file a petition for review of the procedures the School Corporation followed in making its decision to expel H.L.K.  Because the juvenile court did not find, nor do the parties argue, that the School Corporation failed to follow the correct procedures, the issuance of the permanent injunction was erroneous.

Matter of H.L.K.
, 666 N.E.2d at 85.

I

We agree with the majority of the Court of Appeals panel that the juvenile court did not have authority to entertain H.L.K.’s guardian’s petition to modify its dispositional order to require the school corporation to admit H.L.K. as a student.  While the juvenile code authorizes the juvenile court “[t]o control the conduct of any person in relation to [a] child” under the jurisdiction of the court “upon the motion of a child’s parent, guardian, custodian, or guardian ad litem,” Ind. Code § 31-6-7-14(a)(1),
(footnote: 5) the judicial review provisions of the pupil discipline statute provide a more detailed manner for a court to control a school corporation in relation to a child upon the motion of the child (or the child’s parent, guardian, or guardian ad litem), Ind. Code § 20-8.1-5.1-15 (Supp. 1995).  This conclusion comports with the principle of statutory construction that where two statutes cannot be harmonized and the legislature dealt with a subject in a detailed manner in one statute and in a general manner in the other, the detailed statute will supersede the general one.  
Sanders v. State
, 466 N.E.2d 424, 427 (Ind. 1984) (quoting 
Indiana Alcoholic Beverage Comm’n v. Osco Drug, Inc.
, 431 N.E.2d 823, 833 (Ind. Ct. App. 1982)).  This conclusion is also consistent with the firmly established administrative law of this state concerning exhaustion of administrative remedies.  
See
, 
e.g.
, 
Avon Lakes Joint Venture v. Avon Utils., Inc.
, 648 N.E.2d 641, 644 (Ind. 1995); 
Wilson v. Bd. of Indiana Employment Sec. Div.
, 270 Ind. 302, 305, 385 N.E.2d 438, 411 (1979).

II

As just discussed, when the pupil discipline statute is validly invoked, the pupil discipline statute pre-empts the authority of the juvenile court “[t]o control the conduct of any person in relation to [a] child” under the jurisdiction of the court “upon the motion of a child’s parent, guardian, custodian, or guardian ad litem.” Ind. Code § 31-6-7-14(a)(1) (now Ind. Code § 31-32-13-1(1)).
(footnote: 6)  However, because the judicial review provisions of pupil discipline statute are available only to the student subject to discipline (and the student’s parent, guardian, and guardian ad litem),
(footnote: 7) we conclude that the pupil discipline statute does not pre-empt the authority that persons other than the child (and the child’s parent, guardian, or guardian ad litem) have under Ind. Code § 31-6-7-14(a)(1) (now Ind. Code § 31-32-13-1(1)).

In this case, independent of H.L.K.’s guardian’s petition for modification, the chief probation officer filed motions for injunctive relief to prevent the school corporation from expelling H.L.K.  Indiana Code § 31-6-7-14(a)(1) (now Ind. Code § 31-32-13-1(1)) authorizes the juvenile court “[t]o control the conduct of any person in relation to [a] child” under the jurisdiction of the court “upon the motion of . . . a probation officer.”  As the judicial review provisions of the pupil discipline statute do not govern probation officers, those provisions do not limit the authority of the juvenile court to act upon a probation officer’s motion.
(footnote: 8)

Noting the broad grant of judicial authority provided, we emphasize the need for judicial restraint in its exercise; carefully circumscribed and employed only after considering not only the best interests of the child but also of the third person subject to the court’s order (in this case, the school and its students), and only when other reasonable alternatives are not available.  Appellate scrutiny of the exercise of this judicial authority will necessarily be higher than the usual to assure that this authority is not abused.

Conclusion

We conclude that the juvenile court in this case was without authority to grant H.L.K.’s petition to modify the court’s prior dispositional order to require the school corporation to admit H.L.K. as a student but did have authority to grant the chief probation officer’s motions for injunctive relief to prevent the school corporation from expelling H.L.K.  As noted by the majority of the Court of Appeals panel, having concluded that this case is moot, no further action in this case is necessary.

DICKSON and SELBY, JJ., concur.

SHEPARD, C.J., dissents with separate opinion
 in which BOEHM, J., concurs.

ATTORNEY FOR APPELLANT ATTORNEYS FOR APPELLEE

James A. Lang Samuel T. Green

Jeffersonville, Indiana Jeffersonville, Indiana

IN THE

SUPREME COURT OF INDIANA

WEST CLARK COMMUNITY SCHOOLS, )

)

Appellant (Respondent below), )  10S01-9611-JV-706

)  in the Supreme Court

v. )  

)  10A01-9512-JV-406

H.L.K., )  in the Court of Appeals

)

Appellee (Petitioner below). )

APPEAL FROM THE CLARK SUPERIOR COURT

The Honorable Jerome R. Jacobi, Judge

Cause No. 10D01-9505-JD-304

SHEPARD, Chief Justice, dissenting.

When this case was argued before us, counsel for H.L.K. asserted that the protective order sections of the juvenile code, Indiana Code § 31-6-7-14(a)(1), conferred virtually plenary supervisory authority over any person or institution a juvenile judge might wish to commandeer.  "Do you mean a judge could order a school to admit a student to a limited-enrollment class because the judge thought the student would benefit even if the student did not qualify for the class?" we asked.  Yes, said counsel.  "Do you think the court could order a private employer to hire a student because the judge thought he or she would benefit from having a job?"  Yes, said counsel.

It seemed unlikely that most lawyers would assert such sweeping ideas of judicial power.  It seemed even more unlikely that this Court would decide to embrace such "a broad grant of judicial authority."  Slip op. at 10.  The unlikely has occurred, however, and I choose not to join.  There are a number of reasons why it is wrong to do so.

First, there is every reason to regard the simple phrase in the juvenile code over which we now contest ("control the conduct of any person in relation to the child") as providing injunctive authority that a court may use in carrying out its substantive powers enumerated elsewhere in the statute.  The paradigmatic use of this tool is the protective order aimed at the live-in boyfriend who proves to be a danger to a child's well-being.  The only two reported opinions in which other supreme
 
courts have interpreted juvenile statutes like our own have reached just such a conclusion about the nature of the power they confer.  
In re Roger S.
, 338 Md. 385, 394, 658 A.2d 696, 700 (1995) ("[I]t simply supplements the court's authority with respect to those matters within the court's purview under other provisions of the [CHINS] Act. . . .  To read the [CHINS statute] broadly enough to sustain the local court's order in this case would allow the comprehensive design established in the Education Article to be routinely circumvented through juvenile court proceedings."); 
In re B.F., Juvenile
, 157 Vt. 67, 71, 595 A.2d 280, 282 (1991) ("[T]he order in B.F. is invalid if viewed as an attempted exercise of authority, through the guise of a protective order, over the manner in which [the Department of Social and Rehabilitation Services] transports juveniles. . . .  The juvenile court has not been granted the power to intrude into SRS's custody whenever it perceives harmful or detrimental conduct.")

Second, the Court uses a telling vocabulary in describing why courts have such broad power under the protective order provisions in the juvenile code.  It says that the pupil discipline statute "does not pre-empt the authority" possessed by probation officers.  This choice of vocabulary will prove daunting to lawyers representing those hauled before the courts as responding parties in situations like the one today.  The judge's employee, the probation officer, helps the judge fashion a plan for addressing problems they see in the case before them.  Some citizen or agency who seems not to be acting according to that plan is sued by the probation officer, acting to vindicate his "authority", and must thereafter make a defense before the judge who formulated the plan.  Lawyers and clients who find themselves responding under such circumstances will probably not think this is a level playing field.

Third, the majority firmly asserts that a court has "full authority" in lawsuits brought by students or their parents or probation officers with respect to any act of a school not covered by the pupil discipline act.
(footnote: 1)  
This is the very power embraced by counsel at argument.

The Court's expansive statements concerning judicial power are all spun out of a rather simple protective order provision in the juvenile code.  The legislature's most recent pronouncement in this field reflects an impatience with judicial intrusions on the disciplinary work of school counselors, teachers, and boards.  The Court has read the music, but it fails to catch the tune.  It makes more difficult the task of local educators as they try to deal with the most serious discipline cases, students who commit felonies.  In this instance, as the majority points out, the court's probation officer thought it necessary to weigh whether the charge should be criminal recklessness or attempted murder.  I think the school counselors made a responsible call about whether it was H.L.K. who needed protection or her fellow students.

Boehm, J., joins in this dissent.

FOOTNOTES
1:
Ind. Code § 35-42-2-2 (1993).

2:
Ind. Code § 20-8.1-5.1-1 
et
 
seq.
 (Supp. 1995).  

3:
H.L.K.’s father “had never been on the scene.”  H.L.K.’s mother had died two years earlier (when H.L.K. was 12 years old) after five years of intense suffering from ovarian cancer.  H.L.K. nursed her mother through the final stages of illness, getting up at night and giving her medication.  However, four or five times her mother had been hospitalized and H.L.K. “was uprooted abruptly from wherever she was living, whatever school system she was in, whatever friends she had, and was moved.”

4:
As to the school corporation’s argument regarding the applicability of 
Matter of P.J.
, the juvenile court found 
Matter of P.J.
 to be controlling in that the section of the juvenile code invoked by the Court of Appeals in deciding that case, Ind. Code § 31-6-7-14, was the same section at issue here, 
i.e.
, Ind. Code § 31-6-7-14 applies to both CHINS and delinquency cases.  (Pursuant to P.L. 1-1997, Ind. Code § 31-6-7-14 is changed to Ind. Code § 31-32-13-1 
et
 
seq
.)

5:
Pursuant to P.L. 1-1997, Ind. Code § 31-6-7-14(a)(1) is changed to Ind. Code § 31-32-13-1(1).

6:
We do 
not
 hold that a school corporation is not a "person" for purposes of Ind. Code § 31-6-7-14(a)(1) (now Ind. Code § 31-32-13-1(1)).  A juvenile court continues to have full authority to control the conduct of a school corporation in relation to a child adjudicated CHINS or delinquent except with respect to matters in which the school corporation has invoked the pupil discipline statute.

7:
See
 Ind. Code §§ 20-8.1-5.1-13 & 15. 

8:
As this conclusion implies, we disagree with the majority of the Court of Appeals panel that the 1995 amendment to the judicial review provisions of the pupil discipline statute was meant to overrule 
Matter of P.J.
  The changes to the pupil discipline statute described in the excerpt from the Court of Appeals opinion set forth 
supra
, indicate that the legislature meant to impose a more restrictive standard of review on circuit and superior courts reviewing the discipline determination.  But 
Matter of P.J.
 was not decided or dependent upon the standard of review in the pupil discipline statute and so a different standard of review would not have affected the outcome of 
Matter of P.J.
  More broadly, there is no language in the amended statute that addresses the jurisdiction or authority of juvenile courts.

1: 
Under the majority opinion, a juvenile judge continues to have full authority to control the conduct of a school corporation in relation to a child adjudicated CHINS or delinquent except with respect to matters in which the school corporation has invoked the pupil discipline statute.