BOARD OF SCHOOL TRUSTEES OF THE MUNCIE COMMUNITY SCHOOLS, Dr. Jack M. Bowman and Muncie Community Schools, Appellants–Defendants,

v.

Anthony BARNELL, by next friend, Barbara DUNCAN, Appellee–Plaintiff.

No. 18A02–9602–CV–101.

Court of Appeals of Indiana.

April 7, 1997.

William V. Hughes, Beasley Gilkison Retherford Buckles & Clark, Muncie, for Appellants–Defendants.

David J. Emmert, Indianapolis, for amicus curiae Indiana School Boards Association.

Teresa M. Quirk, Muncie, for Appellee–Plaintiff.

## OPINION

SULLIVAN, Judge.

The Board of School Trustees of the Muncie Community Schools; the Muncie Community Schools; and Dr. Jack Bowman (Bowman), the schools' superintendent (collectively "the Board"), appeal the judgment of the trial court lifting the expulsion of Anthony Barnell (Barnell) and ordering his reinstatement to school. The Board presents the following restated issue for our review: whether the trial court exceeded the statutorily prescribed scope of judicial review of school disciplinary matters when it reversed the Board's decision to expel Barnell.

On September 27, 1995, Barnell, then a seventh grade student at the Wilson Middle School in Muncie, Indiana, brought what is commonly known as a "Swiss army knife" into school. The school's principal discovered the knife and suspended Barnell pending expulsion proceedings. The principal issued a recommendation the same day to superintendent Bowman that Barnell be expelled until January 16, 1996. On October 2, 1995, Bowman appointed William DuChane (DuChane), another school administrator, to serve as the expulsion hearing examiner in Barnell's case. The next day, DuChane notified Barbara Duncan (Duncan), Barnell's mother, that an expulsion meeting would be held on October 5, 1995, and that she and Barnell would have the opportunity to present evidence on Barnell's behalf.

The hearing was rescheduled for October 10, 1995, at Duncan's request. At the hearing, Barnell was accompanied by Duncan and legal counsel. On October 23, 1995, DuChane issued his findings and recommendations to superintendent Bowman. DuChane concluded that Barnell's possession of a knife while at school violated the school's disciplinary policy, and recommended that Barnell be expelled until January 16, 1996. Bowman adopted DuChane's recommendation the same day, and notified Duncan and Barnell that Barnell would be expelled until January 16, 1996. This notice provided that Bowman's determination could be appealed to the school board, and on October 25, Duncan notified the Board of her intent to appeal.

The school board heard Barnell's appeal on November 14, 1995 at its next scheduled meeting. After hearing evidence and arguments from both sides, the school board voted to affirm superintendent Bowman's decision to expel Barnell until January 16, 1996. Duncan and Barnell were notified in writing of the school board's action on November 15, 1995.

Barnell requested judicial review of the Board's action on November 30, 1995, and a hearing was held before the court on December 12, 1995. On December 20, 1995, the court delivered its judgment lifting Barnell's expulsion and ordering his return to school. The court's ultimate determination was "that the Muncie Community School Board acted without procedural due process and unreasonably and arbitrarily expelled Anthony Barnell from school until January 16, 1996." Record at 41. The Board appeals the trial court's ruling, contending that this determination exceeded the permissible scope of judicial review for student disciplinary matters.

Barnell, however, argues that the question before us is moot because the Board did not commence this appeal until after the expiration of his original term of expulsion.

An appellate court will generally consider an issue moot and therefore not an appropriate subject for judicial action when the dispute is no longer live and the parties lack a legally cognizable interest in its outcome, or when effective relief cannot be afforded to the parties. *City of Evansville v. Zirkelbach* (1996) Ind.App., 662 N.E.2d 651, 653, *trans. denied.* Since the time during which Barnell was to have been expelled has passed, and since there is no indication that the Board could order his expulsion served at another time in the event of reversal of the trial court's decision, we agree that the dispute before us is moot.

■ However, it is well settled that we may review moot issues in cases which involve questions of significant public importance which are likely to recur. *Id.* It is beyond dispute that matters of student discipline and their impact upon the education of the children of our state are questions of great public importance. Further, since it is certainly foreseeable that decisions by school administrators and local school boards to discipline students will be challenged in court, it is likely that the issue of the proper scope of judicial review in such cases will recur. Therefore, we will address the issue presented by the Board.

The Board's primary argument is that the trial court exceeded its statutorily prescribed scope of judicial review when it reversed the Board's decision to expel Barnell. I.C. 20–8.1–5.1–15 (Burns Code Ed.1997) states:

> [j]udicial review of a governing body's action under this chapter [Chapter 5—Due Process and Pupil Discipline] by the circuit court or superior court of the county in which a student who is the subject of the governing body's action resides is limited to the issue of whether the governing body acted without following the procedure required under this chapter.

Expulsion procedures are set forth at I.C. 20–8.1–5.1–13 (Burns Code Ed.1997). These procedures provide that a superintendent may conduct an expulsion meeting or may appoint either legal counsel or another school administrator to conduct the meeting. I.C. 20–8.1–5.1–13(a). If such a meeting is arranged, the student subject to disciplinary action and the student's parent must be given notice of their right to appear. I.C. 20–8.1–5.1–13(b). The individual conducting the hearing must summarize in writing the evidence presented at the meeting, and must notify the student and his or her parent of any action taken. I.C. 20–8.1–5.1–13(c). This decision may be appealed to the school board if the student or the student's parent notifies the school board of their desire to appeal within ten days of receipt of the notice of action taken. The school board must conduct a hearing at which it will generally consider the written summary of evidence and any arguments made by and on behalf of the school and the student. This subsection notes that further appeals may only be taken under the above-quoted section relating to the scope of judicial review. I.C. 20–8.1–5.1–13(d).

The Board argues that the trial court was exclusively limited to reviewing the Board's compliance with these procedures. Therefore, according to the Board, the trial court's decision that Barnell's expulsion was unreasonable and arbitrary, and that the Board denied Barnell procedural due process, was an erroneous deviation from the proper scope of judicial review and must be reversed.

■ We do not, however, read I.C. 20–8.1–5.1–15 to entirely prevent a court upon judicial review from determining whether a disciplinary action comports with the minimum requirements of due process. It was settled long ago that in Indiana there is a constitutional right to judicial review of an administrative decision. *Warren v. Indiana Telephone Co.* (1940) 217 Ind. 93, 26 N.E.2d 399. In *Warren,* our Supreme Court ruled that the legislature's attempts to prevent judicial review of the findings of an administrative body by a court, and to prohibit the supreme court from exercising its right to review action taken by the appellate court, unconstitutionally violated this right of review. As the court in *Warren* explained:

> [s]trictly speaking, there is no such thing as an appeal from an administrative agency. It is correct to say that the orders of an administrative body are subject to judicial review; and that they must be so to

meet the requirements of due process. Such review is necessary to the end that there may be an adjudication by a court of competent jurisdiction that the agency has acted within the scope of it powers; that substantial evidence supports the factual conclusions; and that its determination comports with the law applicable to the facts found.

*Id.* 26 N.E.2d at 404.

Our Supreme Court has explained that this constitutional right to judicial review of agency decisions not only forbids attempts to withdraw the right of review entirely, but also bars legislative efforts to limit judicial review of agency determinations to certain questions. For example, in *Prunk v. Indianapolis Redevelopment Commission* (1950) 228 Ind. 579, 93 N.E.2d 171, *appeal dismissed,* 340 U.S. 950, 71 S.Ct. 575, 95 L.Ed. 685, the court determined that the legislature could not constitutionally limit the permissible scope of the trial court's judicial review of decisions of the Redevelopment Commission to the question of public utility and benefit in acquiring certain property for redevelopment purposes. According to the *Prunk* court, " '[t]he power of the courts to confine administrative boards and commissions within their constitutional jurisdiction, and to enjoin unreasonable administrative or legislative orders or regulations, is not derived from [ ... ] statute, but exists through and under the Constitution.' " *Id.* 93 N.E.2d at 173 (quoting *Public Service Comm'n of Indiana v. City of La Porte* (1935) 207 Ind. 462, 193 N.E. 668, 669). This holding has been reaffirmed in *Hawley v. South Bend* (1978) 270 Ind. 109, 383 N.E.2d 333, and in *Salk v. Weinraub* (1979) 271 Ind. 115, 390 N.E.2d 995.

Moreover, our Supreme Court has recognized that Article 1, section 12 of the Indiana Constitution mandates "that all discretionary acts of public officials, which directly and substantially affect the lives and property of the public, are subject to judicial review where the action of such officials is fraudu-

lent, arbitrary or capricious, or otherwise illegal." *State ex rel. State ex rel. Smitherman v. Davis* (1958) 238 Ind. 563, 151 N.E.2d 495, 498 (footnote omitted).[1] The court in *Smitherman* therefore concluded that students may not be denied judicial review for the arbitrary, capricious, or otherwise illegal discretionary acts of school officials.

However, Judge Baker, dissenting in *In re P.J.* (1991) Ind.App., 575 N.E.2d 22, 25 (Baker, J., dissenting), cautioned that the *Smitherman* holding should not be read to permit courts to intervene in school matters when the legislature has provided a specific method of review for school officials' discretionary acts. Judge Baker expressed considerable skepticism about an expanded role of the courts as arbiters of local school disciplinary matters. It might be argued that the legislature's limitation upon the scope of judicial review of school disciplinary decisions to compliance with statutory procedures is justified by this reluctance to allow courts to oversee and intervene in disciplinary matters. Nevertheless, because the legislature may not limit the scope of judicial review to certain questions, the legislature may not prevent a court from reviewing the constitutionality of the disciplinary decisions of a school board or of school officials. Judge Baker, dissenting in *P.J.*, recognized this point, writing, "[t]he schools belong to our communities, not, *except as the legislature provides or the state or federal constitution mandates,* to our courts." *Id.* at 27 (Baker, J., dissenting) (emphasis supplied). We therefore conclude that, notwithstanding I.C. 20–8.1–5.1–15, the reviewing court was not strictly limited to assessing the extent to which the Board's actions satisfied statutorily prescribed procedures.

*In re P.J., supra,* 575 N.E.2d at 22, involved the issue of the exclusivity of the juvenile court's jurisdiction over delinquent children in light of the school discipline statute, which at the time provided that " '[n]o decision of any court of the state of Indiana shall override a suspension, exclusion or ex-

---

1. Ind. Const. art. 1, § 12, provides that "[a]ll courts shall be open; and every man, for injury done to him in person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase, completely, and without denial; speedily, and without delay."

pulsion made as provided under this chapter except by way of the appeal provided under section 11 of this chapter.'" *Id.* (quoting I.C. 20–8.1–5–15 (repealed 1995)). The *P.J.* majority essentially determined that the exclusive nature of the juvenile court's jurisdiction trumped the legislature's limitation of judicial review of school disciplinary decisions. Judge Baker dissented, reasoning that the avenue for judicial review set out by the legislature should prevail.

This court was faced with the same issue in *In re H.L.K.* (1996) Ind.App., 666 N.E.2d 80, *trans. granted.* Judge Baker, writing for the majority, determined that the legislature's repeal of the version of the student discipline statute involved in *P.J.* and its enactment of I.C. 20–8.1–5.1–15, ostensibly limiting judicial review solely to the question whether the statutory procedures had been followed, overruled the holding in *P.J.*[2] *H.L.K.* essentially held that a juvenile court could not properly enjoin the action of a school board until a student had complied with the mode of judicial review set forth by the legislature. The case at bar does not involve the tension between the authority of a juvenile court over delinquent children and the authority of a school corporation over suspensions and expulsions of students. This case presents a more one-dimensional issue—the scope of a court's ability to review the actions of a school board's decisions in disciplinary matters. Our conclusion that I.C. 20–8.1–5.1–15 does not prevent a court upon judicial review from determining the constitutionality of actions of the school board should not impact the jurisdictional balance struck by this court in *H.L.K.* We are not in a position to disagree with the holding in *H.L.K.* that the opportunity for judicial review of school board disciplinary matters limits the juvenile court's ability to meddle with school corporation decisions. We simply do not believe that the legislature may constitutionally limit the scope of that judicial review as it has attempted to do here.

■ The review court here did not exceed its permissible scope of judicial review. The Administrative Orders and Procedures Act (AOPA) provides that a court must set aside the action of an agency and either remand the matter to the agency or compel further agency action if the agency's action prejudiced the individual seeking review and was

(1) Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) Contrary to constitutional right, power, privilege, or immunity;

(3) In excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) Without observance of procedure required by law; or

(5) Unsupported by substantial evidence. I.C. 4–21.5–5–14(d), –15.

Our Supreme Court has indicated that the standards set forth in the statute represent, in effect, the codification of the minimum requirements of due process first announced in *Warren, supra,* 217 Ind. 93, 26 N.E.2d 399. *Salk, supra,* 271 Ind. 115, 390 N.E.2d 995.

■ One might argue that this court's holdings that the Administrative Adjudication Act (AAA) "specifically does not apply to actions taken by a local school board", *South Bend Comm. Sch. Corp. v. National Educ. Ass'n* (1983) Ind.App., 444 N.E.2d 348, 350, would be applicable, by analogy to the successor statute, and render the standard of review set out above inapplicable to the present case. However, it is clear that the scope of review set forth in the AOPA is the proper scope of judicial review for the actions of all governmental agencies, regardless of whether the formal requirements of the AOPA would otherwise apply. In *Salk, supra,* 271 Ind. 115, 390 N.E.2d 995, 997, our Supreme Court determined that a trial court should have the discretion to apply the standard of

---

2. Our Supreme Court granted transfer in *H.L.K.* on November 14, 1996, but has not yet issued an opinion in the case. We are therefore obligated to acknowledge that pursuant to Appellate Rule 11(B)(3), the Court of Appeals majority opinion has been vacated. Our discussion of this case is not intended to be construed as giving it precedential value, for we are forbidden to do so. It is mentioned merely in order to place the earlier decision in *In re P.J., supra,* in perspective in the light of the legislative enactment of I.C. 20–8.1–5.1–15.

review enunciated above despite the fact that the agency in question was not within the existing version of the AOPA. This court came to the same conclusion in *Bolerjack v. Forsythe* (1984) Ind.App., 461 N.E.2d 1126, in which we noted that:

> issues concerning the permissible scope of judicial review are governed by principles common to both the [AAA] and general principles of administrative law, regardless of whether the agency is [covered by the Act]. Article 3, Section 1 of the Indiana Constitution imposes the separation of powers as the most significant and stringent limitation on the extent of judicial review of an administrative adjudication.

*Id.* at 1129. We therefore concluded that "resolving the essential issue of the permissible scope of judicial review ... should be considered without distinguishing cases arising under the [AAA] from those that do not." *Id.* In other words, the scope of review set forth in the code applied to judicial review of all administrative actions. Thus, the scope of the court's judicial review in the case at bar was properly limited by the standards set forth in the AOPA.

The review court ultimately concluded that the Board "acted without procedural due process and unreasonably and arbitrarily expelled Barnell from school until January 16, 1996." Record at 41. An examination of the proper scope of judicial review of agency actions listed above reveals that the court was appropriately concerned with arbitrariness and with the extent to which the requirements of due process were satisfied. However, while we do not believe that the court exceeded its permissible scope of judicial review here, its determination was incorrect.

■ This court has noted that an arbitrary and capricious administrative act is one which is willful and unreasonable, without consideration and in disregard of the facts or circumstances of the case. *Metropolitan Sch. Dist. of Martinsville v. Mason* (1983) Ind.App., 451 N.E.2d 349. School principals, superintendents, and administrative staff members are empowered to take any action "reasonably necessary to carry out or prevent interference with an educational func-

tion or school purposes." I.C. 20–8.1–5.1–5 & –6. The term "school purposes" includes the maintenance of an orderly and effective educational system. I.C. 20–8.1–1–8. Barnell argues that since he was not threatening any one with what might be considered by some to be a relatively innocuous knife, his expulsion was not reasonably necessary to maintain order and was therefore arbitrary. We disagree. School officials, with their expertise in such matters, are in the best position to determine in their discretion what actions are reasonably necessary to carry out school purposes, and their decisions in this regard will not be disturbed upon judicial review unless clearly arbitrary and groundless.

Moreover, it is uncontested that the Muncie Community Schools were governed by a validly enacted rule prohibiting the knowing possession, handling or transmission of knives at a school. Neither is it contested that Barnell carried a knife into school in violation of this rule. The rules of conduct governing students did provide that repeated violations of rules would be met with progressively severe disciplinary actions. The review court apparently felt that the school's failure to provide Barnell, a student with an otherwise clean record, with some form of progressive discipline, was arbitrary. The court stated "if the rule is 'one strike and you're out', then it must be spelled out in no uncertain terms." Record at 41. However, the student conduct guidelines clearly state that this is in fact the rule. As the regulations state, "[s]tudents face automatic expulsion from school for bringing a weapon to school. This includes ... knives, and other items that could be used as a weapon. There is simply no reason to bring any item of this type [to] school." Record at 121. Barnell carried a knife into school in clear violation of school rules. He was consequently expelled as specifically provided for in the rules of conduct. We see nothing arbitrary in the Board's decision.

■ The review court found that Barnell was not afforded procedural due process. Barnell claims that his due process rights were violated by expulsion meeting officer DuChane's alleged failure to comply with the requirement that he "make a written sum-

mary of the evidence heard at the expulsion meeting." I.C. 20–8.1–5.1–13(c)(1). DuChane's written findings stated that Barnell "submitted the following evidence: During opening and closing statements—Knife purchased while on field trip as 6th grader. The Swiss–Army type knife was not being used by Anthony as a weapon." Record at 71. While DuChane's findings may not qualify for the Nobel Prize for literature, we fail to see how they do not constitute a written summary of the evidence.

■ Barnell and the review court also find a due process violation in the length of time which elapsed between Barnell's initial suspension on September 27, 1995 and the school board's final determination on November 14, 1995. The lapse does not constitute an unconstitutional delay. The expulsion meeting between Barnell and DuChane was initially scheduled for October 5, 1995, six school days after Barnell's initial suspension. However, Duncan requested that the meeting be pushed back until October 10, 1995. Nine school days later, on October 23, 1995, DuChane delivered his findings and superintendent Bowman expelled Barnell. The school board heard and denied Barnell's appeal at its next scheduled meeting on November 14, 1995. Barnell was entitled to, and was afforded, the opportunity to be heard and to appeal the decision of the expulsion hearing officer. While this process may have taken longer than Barnell wished, we do not perceive under the circumstances any violation of the requirements of due process.

■ It appears from an examination of the record that the review judge's order was based at least in part upon facts and assumptions not presented as evidence at any stage of the proceedings. For example, the trial judge concluded that "it is apparent to this Court that the administrators were determined from the start to make an example of this child.... And what more nearly perfect student to use as an example: a very young, non-minority boy from a working-class family." Record at 40. Moreover, in response to the notion that Barnell's expulsion taught him that the violation of a rule has consequences, the court wrote, "[i]t seems to this Court that what Anthony now realizes is a

fact most of us already have learned, many the hard way, that the first prerequisite to leaving the teaching profession to become an administrator is to leave behind all common sense and compassion." Record at 40. None of these conclusions find any factual basis in the record, and therefore may not and do not support the court's ruling.

In sum, we conclude that the trial court erroneously overturned the decision of the Board to expel Barnell. While this conclusion would normally require us to reverse and remand the case for further proceedings, our prior determination that the matter is moot renders further action unnecessary.

The judgment of the review court is reversed with instructions that it be vacated as a matter of record.

FRIEDLANDER, J., concurs in result with separate opinion.

BAKER, J., concurs in result with separate opinion.

FRIEDLANDER, Judge, concurring in result.

I agree that the trial court erred in overturning the Board's decision. I write separately to clarify the basis of my concurrence.

As an initial matter, I believe that *In re P.J.*, 575 N.E.2d 22 (Ind.Ct.App.1991) and *Matter of H.L.K.*, 666 N.E.2d 80 (Ind.Ct.App. 1996), *trans. granted*, both of which the majority discusses at length, are irrelevant to the issue before us. In those cases, this court discussed the tension between the powers granted by the legislature to the school board and the powers of juvenile courts. In the instant case, on the other hand, we are confronted with the appropriate standard to be applied by the courts of this state when reviewing a school board's disciplinary decisions.

I agree with the majority that the legislature may not restrict the scope of judicial review of certain questions, including the constitutionality of disciplinary decisions made by school authorities. When reviewing such actions, we examine whether the school board adhered to statutorily prescribed procedures, and whether the substance of the

action was consistent with minimum due process requirements, as announced in *Warren v. Indiana Telephone Co.*, 217 Ind. 93, 26 N.E.2d 399 (1940).

I am in complete agreement with the majority's conclusions that the Board adhered to the applicable procedural guidelines, and that the expulsion here was neither arbitrary nor groundless. In reaching the latter conclusion, the majority observes that school officials are in a superior position to determine what actions are reasonably necessary to maintain order and promote learning in our schools. I emphasize here my view that this principle should guide our courts when reviewing the substance of school board disciplinary actions.

Subject to the above clarification, I concur.

BAKER, Judge, concurring in result.

Although I agree with the majority that the legislature cannot restrict a court's review of the constitutionality of an administrative agency's actions, I write separately to express my concern regarding the majority's discussion of *In re P.J.*, 575 N.E.2d 22 (Ind. Ct.App.1991) (Baker, J., dissenting), and *Matter of H.L.K.*, 666 N.E.2d 80 (Ind.Ct.App. 1996), *trans. granted.*

As the majority notes, both *P.J.* and *H.L.K.* discussed the tension between the powers granted to the school board by the legislature and the powers of juvenile courts. Specifically, we were asked to determine whether a juvenile court had the authority to issue an order requiring a student to attend school when the school board had already issued an order expelling that student. Although the majority in *P.J.* determined that the powers given to the juvenile courts should prevail, we held in *H.L.K.* that the legislature's changes to IND. CODE § 20–8.1–5.1–15 evidenced an intent to return the balance of power to the schools. However, the decision in *H.L.K.*, which I authored for the majority, did not address the limits or constitutionality of the legislature's changes to the statute. As such, I believe that the decision is irrelevant to the instant case. Therefore, while I appreciate the majority's scholarship, I cannot embrace this portion of the opinion. In all other respects, however, I concur.