Spencer **SHERRELL**, by his Next Friend and Parent, Glenda **SHERRELL**, Appellant–Petitioner,

v.

**NORTHERN COMMUNITY SCHOOL CORPORATION OF TIPTON COUNTY, The Board of School Trustees of the Northern Community Schools, Dr. Gerald Novak, Superintendent of Northern Community Schools, and Therese Howe, Principal of Tri–Central High School, Appellees–Respondents.**

No. 80A02–0304–CV–367.

Court of Appeals of Indiana.

Jan. 16, 2004.

---

Milo G. Gray, Jr., Debra J. Dial, Gary W. Ricks, Indiana Protection & Advocacy Services, Indianapolis, IN, Attorneys for Appellant.

Kathleen I. Lee, Bose McKinney & Evans LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-petitioner Spencer Sherrell ("Spencer"), by his next friend and parent, Glenda Sherrell ("Glenda"), appeals his expulsion from Tri–Central High School ("the School").[1] We affirm.

### Issue

The dispositive issue is whether the decision of the Board of School Trustees of the Northern Community Schools ("the Board") to expel Spencer was arbitrary and capricious.

---

1. We refer to appellees-respondents collectively as "Appellees."

## Facts and Procedural History[2]

On the evening of March 6, 2001, while off school grounds, sixteen-year-old Spencer stated in the presence of two school friends that he was going to "get his dad's gun in Indianapolis, bring it to school, start with the seventh grade, and work his way up." Appellant's App. at 54 (transcript of expulsion hearing).[3] Someone informed the School of Spencer's threat. The next morning, School Principal Therese Howe and Assistant Principal Jerry Fernung interviewed Spencer, who admitted that he had made the threat and that "what he had done was wrong and against school rules." *Id.* No gun was found in Spencer's locker. Spencer was then interviewed by a sheriff's deputy and a probation officer, who later testified that she decided not to "file a petition to the prosecutor" because "there was nothing that [they] could find in the criminal code book that would classify as an unlawful act." *Id.* at 62. The deputy and the probation officer did not discuss the matter with the prosecutor, and no charges were filed against Spencer.

In a letter dated March 8, 2001, Fernung notified Glenda that Spencer had been suspended for ten days for violating the following provision of the Northern Community School Corporation's ("the Corporation") student code of conduct:

GROUNDS FOR SUSPENSION OR EXPULSION

Grounds for suspension or expulsion are student misconduct or substantial dis-

obedience. The following include examples of student misconduct or disobedience, but are not limited to:

1. Using violence, force, noise, coercion, threat, intimidation, fear, passive, resistance, or other comparable conduct constituting an interference with school purposes, or urging other students to engage in such conduct.

*Id.* at 69. The letter stated that Spencer had been suspended "[b]ecause of the seriousness of [his] threat." *Id.* at 91. Also on that date, Howe requested that Superintendent Dr. Gerald Novak initiate expulsion proceedings against Spencer "to prevent or substantially reduce the risk of . . . [i]nterference with an educational function or school purposes[.]" *Id.* at 93–94. On March 12, 2001, Novak determined that there were reasonable grounds for investigation and appointed Bill Horner to serve as expulsion examiner. In a letter dated that same day, Horner notified Spencer and Glenda of their right to an expulsion hearing.

On March 29, 2001, Horner presided at the expulsion hearing. The following day, Horner issued the following findings and decision on a preprinted form:

On the basis of the greater weight of the credible evidence presented, I find that: (Findings) *Spencer Sherrell made the statements that caused the recommendation.*

I conclude that the misconduct of the student (violated) (did not violate)[4] the following student conduct rule(s) as set

**2.** We heard oral argument in this case on December 16, 2003, in Indianapolis.

**3.** In his statement of facts, Spencer says only that he "allegedly told two of his friends that he was going to take a gun to school." Appellant's Br. at 8. Appellees properly chide Spencer for failing to mention his threat to "start with the seventh grade, and work his way up." Also, given that Spencer admitted

to making the threat, his use of the term "allegedly" is not well taken.

**4.** On the preprinted form, Horner did not specifically indicate whether Spencer's misconduct violated the cited student conduct rule. In light of Spencer's expulsion, we presume that Horner concluded that his misconduct did violate the rule.

forth in the school corporation's student discipline policy as adopted by the Board of Education:

(RULES) *Student Handbook, page 17 number 1 Threat & Intimidation*

On the basis of the above findings, I recommend that this matter be resolved as follows:

Resolution:

*Spenser [sic] Sherrill [sic] be expelled from Tri–Central High School for the end of the 2000–2001 school year. The homebound 5 hours per week instruction shall continue until the end of this school year.*

This recommendation meets the needs of the school corporation in that:

*The school corporation has followed Board Policy and due process.*

. . . .

You may appeal the Expulsion Examiner's decision by filing a written appeal to the Board of School Trustees within ten (10) calendar days of the date you received this notice.

*Id.* at 27.

On April 4, 2001, Spencer appealed Horner's decision. On April 16, 2001, the Board held an appeal hearing. On April 23, 2001, the Board issued a decision reading in relevant part as follows:

The Board heard the appeal on the record created in proceedings before the Expulsion Examiner consisting of the following:

(1) the charge made by the Principal;

(2) the notice given by the Expulsion Examiner[;]

(3) the summary of the evidence prepared by the Expulsion Examiner;

(4) the Expulsion Examiner's findings and determination; and

(5) the transcript of the proceedings from the expulsion meeting.

The Board, having considered the record and heard the argument presented on behalf of the Student and on behalf of the School Administration, now makes the following as its findings of fact and conclusions of law in this matter and enters the following decision:

### FINDINGS OF FACT

1. The Student is enrolled in the Northern Community Schools of Tipton County and is assigned for the 2000–01 school year to attend Tri–Central Junior–Senior High School.

2. The Expulsion Examiner, who had the opportunity to listen to and observe the witnesses as they testified and assess their credibility, determined that on March 7, 2001, that the Student admitted that he threatened, in the presence of two school friends while in the home of one of those friends after school hours, to bring a gun to school and shoot students. The Board accepts and adopts this finding and finds that this conduct constitutes dangerous, disruptive and illegal behavior which constitutes an interference with school purposes.

3. The School Corporation has student conduct rules adopted pursuant to Indiana Code 20–8.1–5.1–7(a)(1) which prohibit students from using violence, force, noise, coercion, threat, intimidation, fear, passive resistance, or other comparable conduct constituting an interference with school purposes.

. . . .

7. [The Student's appeal of the Expulsion Examiner's decision] came before this Board on April 16, 2001, on the record, at which time, additional argument was presented in support of and against the Student's expulsion.

8. The Student admitted at the hearing before the Board that he threatened, off of school grounds after school hours, to bring a gun to school and shoot students.

9. At the expulsion hearing, the Student's father admitted that he owned several guns which he kept in his home.

10. The Student's attorney has argued that the Student's threat does not constitute "unlawful activity" under I.C. 20–8.1–5.1–9, because probation officers decided not to charge him with a crime. The Student's counsel further maintains that without a charge of illegal activity, the school does not have authority to expel the Student for conduct that happened off school grounds.

11. The School Administration believes the facts in this case support its contention that the Student's threat was an unlawful act that necessitated his removal "to restore order or protect persons on school property."

12. A conclusion of law that states a finding of fact is hereby adopted as a finding of fact.

### CONCLUSIONS OF LAW

1. The issues of fact in this matter are to be determined pursuant to the procedures outlined in the Indiana student due process statute—Indiana Code 20–8.1–5.1.

2. This Board has jurisdiction over the parties and facts at issue in this matter pursuant to Indiana Code 20–8.1–5.1–13(d) and can exercise this jurisdiction in a hearing in executive session convened pursuant to Indiana Code 5–14–1.5–6.1(b)(5).

3. In the matter of this appeal, the Schools Administration, as the proponent of the proposed expulsion, has the burden of proof by the greater weight of the credible evidence that the Student has engaged in one or more acts in violation of the standards for student behavior adopted by this Board pursuant to Indiana Code 20–8.1–5.1–7 or an unlawful act as described in Indiana Code 20–8.1–5.1–9.

4. At this point in the matter, the Student is properly assigned the burden of production through evidence or argument of one or more of the following:

(a) the decision of the Expulsion Examiner is the result of a defective process of consideration;

(b) an essential finding of fact is contrary to the greater weight of the credible evidence; or

(c) the penalty is not appropriate given the facts or the student's disciplinary history.

5. The Board administratively notes its own acts and concludes the student conduct rules cited by the School Administration in support of its request for the Student's expulsion and cited by the Expulsion Examiner in support of his decision to expel have been lawfully adopted pursuant to Indiana Code 20–8.1–5.1–7(a).

6. On the record in this matter and the oral argument presented on appeal, the greater weight of the credible evidence is with the Administration and Expulsion Examiner and against the Student.

7. The Board disagrees with counsel for the Student that the Student's threat to bring a gun to school and shoot students does not constitute unlawful activity for purposes of Indiana Code 20–8.1–5.1–9.

8. The Board concludes that the Student's conduct was an unlawful act of intimidation, because the Student stated to two other persons that he was going to bring a gun to school and start with

the seventh graders and work his way up, because he was angry at the School's reaction to his problems with a friend, which prompted his threat.[5] The Board further concludes that the Student made this threat with the intent that the other persons be placed in fear for their own safety and the safety of others.

9. Even if the Student's threat does not rise to the level of "unlawful activity," the School's decision is justified on public policy grounds. I.C. 20–8.1–5.1–9, which permits the School Corporation to suspend a student for unlawful activity which occurs off of school grounds, was amended in 1995. Since that time, however, tragic incidents of school gun shootings (as well as copy-cat incidents) have risen dramatically. Schools, parents and students across the nation are aware—either through school training or the media, or both—that any threat of gun violence must be taken seriously. Indeed, shortly before this Student made his threat, the national news covered a high school shooting with fatalities in California, where two friends knew of the perpetrator's intent to shoot students at his school but never told the authorities.

10. Finally, the Board finds that the Student's expulsion through the end of the 2000–01 school year is not unduly burdensome to the Student, as he continues to receive educational services from the School Corporation.

11. For all the above-stated reasons, the Board upholds the Expulsion Examiner's recommendation that the Student be expelled through the end of the 2000–01 school year.

12. A finding of fact that states a conclusion of law is hereby adopted as a conclusion of law.

*Id.* at 97–102. In a letter dated April 24, 2001, Novak notified Spencer and Glenda of the Board's decision and informed them that their "only remaining recourse is with the courts." *Id.* at 95.

On May 23, 2001, Spencer petitioned for judicial review of the Board's decision. On February 6, 2003, the trial court heard oral argument. On March 3, 2003, the trial court issued an order reading in relevant part as follows:

### *Findings of Fact*

1. On or about March 6, 2001, Spencer Sherrell (hereinafter, "Student"), a student at Tri–Central Junior–Senior High School of the Northern Community School Corporation of Tipton County (hereinafter, the "School"), in the presence of two school friends while off school grounds, threatened to "get his dad's gun in Indianapolis, bring it to school, start with the seventh grade, and work his way up."

2. In the morning hours of March 7, 2001, the School was informed of the Student's threat. Other students who overheard the conversation also confirmed the substance of the threat.

3. Principal Howe and Assistant Principal Fernung immediately interviewed the Student, at which time the Student admitted making the reported threat the night before. Further, the Student admitted that he knew his threat violated school rules. The School deemed the Student's threat as an act of intimidation in retaliation for the manner in which the School addressed a

---

**5.** In our review of the expulsion hearing transcript, we could find no testimony regarding Spencer's motivation for making the threat. The parties' appendices do not contain a transcript of the appeal hearing, and thus the nature of Spencer's "problems" and the School's "reaction" remains unknown.

problem between the Student and a friend, which threat was issued by the Student with intent to place other persons in fear for their safety and safety of others.

4. The School suspended the Student effective March 8, 2001 for violating a rule of student conduct prohibiting threats and intimidation. Per the School's obligation under Article 7 and the Individuals with Disabilities Education Act, the Student began receiving homebound instruction on or about March 22, 2001.

5. After proper notice to the Student and his parents, an expulsion meeting was held pursuant to Indiana Code 20–8.1–5.1–13 on March 29, 2001.... [T]he Expulsion Examiner concluded that the Student had violated the School's student behavior rules and determined that the Student would be expelled until the end of the 2001–2001 school year.

6. On April 4, 2001 Student appealed the Expulsion Examiner's determination. The School Board of Trustees (hereinafter "the Board") heard the appeal on April 16, 2001. During the appeal hearing, the Student admitted that after school hours and off of school grounds, he threatened to get one of his father's guns, bring the gun to school, and shoot students. Further, the Student's father admitted that he owned several guns at his home.

7. On appeal, the Board entered findings of facts [sic] and conclusions of law upholding the expulsion on April 23, 2001. The Board concluded the Student's threat was an unlawful act of intimidation prompted by the School's reaction to his problems with a friend. In addition, the Board found the Student made the threat with the intent that other persons be placed in fear for their own safety and for the safety of others.

The Board held that the Student's threat constituted "unlawful activity" pursuant to Indiana Code 20–8.1–5.1–9. Further, the Board determined that the Student's expulsion was not unduly burdensome on the Student, as he continued to receive educational services from the school corporation.

8. On May 23, 2001, pursuant to Ind. Code § 20–8.1–5.1–15, Student sought judicial review of the expulsion from this Court. Student alleges that this expulsion was improper under Indiana Code 20–8.1–5.1–8 because the admitted threat occurred off of school grounds, and also improper under Indiana Code 20–8.1–5.1–9 because the threat did not constitute an "unlawful activity."[1] [Petitioner also asserted in his Petition and briefs that his due process rights and federal and state constitutional rights were violated and that he is entitled to damages and attorney's fees for these violations. At oral argument, however, his counsel affirmatively stated that no such relief is sought in this case, and that Student is merely seeking judicial review of the expulsion in an attempt to overturn it. Accordingly, those arguments are now waived and this Court need not and will not address them.]

. . . .

### Conclusions of Law

1. The law is with Respondents and against Petitioner.

2. The School's Student Conduct Code provides notice to students respecting inappropriate conduct that may result in suspension or expulsion. The first standard listed is the use of "threat, intimidation, ... or other comparable conduct constituting an interference with school purposes."

3. Pursuant to Ind.Code § 20–8.1–5.1–9, the School may suspend or expel a

student for unlawful activity whether it occurs on or off school grounds:

**Ind.Code § 20–8.1–5.1–9: Unlawful Activity by Student**

[A] student may be suspended or expelled for engaging in unlawful activity on or off school grounds if:

(1) the unlawful activity may reasonably be considered to be an interference with school purposes or an educational function; or

(2) the student's removal is necessary to restore order or protect persons on school property; ...

4. At the time of the Student's threat, it was unlawful to communicate a threat to another person with the intent to place the other person in fear of retaliation for a prior lawful act. Ind. Code § 35–45–2–1 (1994).[2] [This is the version in effect at the time of the Student's threat; the statute was revised later in 2001.] The statute defines "threat" as words or actions that express an intent to unlawfully injure the person threatened or another person. Ind.Code § 35–45–2–1(c)(1). If the threat is one to commit a forcible felony or is communicated to a school employee, it is chargeable as a Class D felony; otherwise, it is a Class A misdemeanor. Ind.Code § 35–45–2–1(b)(1).

5. Applying the foregoing statutory definitions, the threat made by the Student was "unlawful." The Student's statement that he was going to bring a gun to school, start with the seventh graders, and work his way up constituted a threat under Indiana law in that he expressed his intent to unlawfully injure other persons in violation of Ind.Code § 35–45–2–1. The School's lawful reaction to a problem the Student had with one of his friends prompted the Student's threat. Thus, the Student intended to place the persons in the School in fear of retaliation for their prior lawful response to his actions.[3] [The record supports a finding that other students were placed in fear of their safety. First, the friends who heard the threat firsthand reported it to the School the very next morning; second, students who overheard the threat confirmed its substance to the School officials; and finally, several parents and students expressed concern for their safety after hearing that a threat to bring a gun to school had been made.] Moreover, the Student intended to commit a forcible felony by shooting persons in the School. Thus, the Student's threat would be chargeable as a Class D felony under the intimidation statute. Ind.Code § 35–45–2–1(b)(1)(A).

6. The Student need not be criminally charged nor convicted to satisfy the intimidation statute.[4] [The Student misstates the factual record by asserting that the deputy and probation officers determined that the Student "had committed no unlawful activity." Rather, the record reflects that the probation officer witness could not define an "unlawful activity." She deferred the inquiry to the prosecutor and stated that they never spoke to the prosecutor about the Student's threat.] The Indiana Court of Appeals has already considered and refuted an argument similar to that which the Student makes here: that is, that his threat does not constitute "unlawful activity" under the controlling statute because probation officers decided not to charge him with a crime. *McCormick Piano & Organ Co., Inc. v. Geiger,* 412 N.E.2d 842, 851 (Ind.Ct.App.1980) ("The term 'unlawful act' does not necessarily mean a criminal act; it connotes any actionable wrong.") (collecting cases.) As the Court of Appeals stated in *Geiger:*

If the Legislature had intended for the civil penalty provisions to be operable only on proof that one of the offenses enumerated in [the controlling statute] resulted in a conviction, it would have drafted the statute to include the word "conviction" which has a well-recognized meaning. The courts cannot add something to a statute that the Legislature has purposely omitted. *Town of Schererville v. Vavrus* [180 Ind.App. 500], 389 N.E.2d 346 (Ind.Ct.App.1979).

*Geiger*, 412 N.E.2d at 851.

7. Similarly, in this case, if the Legislature had intended to limit the definition of "unlawful activity" under Ind. Code § 20–8.1–5.1–9 to only those acts that resulted in the filing of criminal charges or a conviction, it could have drafted the statute accordingly. This Court simply "cannot add something to a statute that the Legislature has purposely omitted." *Whitacre v. State* [274 Ind. 554], 412 N.E.2d 1202, 1206 (Ind. 1980).[5] [The Student offers only argument on this point without any supporting case law or other authority.]

8. The Student's communication of the threat to his friends rather than school officials is of no consequence, as there is no requirement that the threat be communicated directly to the intended victim in order to support a conviction under this statute. *Ajabu v. State*, 677 N.E.2d 1035, 1042 (Ind.Ct.App. 1997).

9. The School's code of conduct clearly states that threats and intimidation are grounds for suspension or expulsion. In addition, the Indiana Student Discipline Act expressly gives a school board the authority to expel a student for unlawful activity that occurs off school property if the activity interferes with school purposes or if necessary to protect persons on school property. Ind.Code § 20–8.1–5.1–9. The Student's threat constituted an unlawful violation of Indiana's intimidation statute.

10. Expulsion was proper according to Ind.Code § 20–8.1–5.1–9 in order to prevent interference with school purposes and to protect persons on school property (even though only one such standard need be met). Because the School's expulsion determination was in accordance with the powers granted to the School under the law, the Student has not met his burden of demonstrating invalidity under Ind.Code § 4–21.5–5–14 in order to overturn the expulsion.

### Order

For all of the foregoing reasons, it is hereby ordered that the expulsion of Student be, and hereby is, AFFIRMED in all respects.

*Id.* at 5–13 (some citations omitted; some alterations added; footnotes placed in text).[6] Spencer now appeals.

### Discussion and Decision

■ As an initial consideration, Appellees observe that Spencer's expulsion has long since ended and urge us to consider his appeal "as moot and inappropriate for judicial review." Appellees' Br. at 14. Spencer responds that Appellees waived their mootness argument by failing to raise it before the trial court and notes that " 'we may review moot issues in cases which involve questions of significant public importance which are likely to recur.' " Appellant's Reply Br. at 3 (quoting *Bd. of Sch. Trustees of the Muncie Cmty. Sch. v. Barnell*, 678 N.E.2d 799, 802 (Ind.Ct.App. 1997)).

6. We commend the trial court for its detailed findings and conclusions.

We first observe that "[t]he determination of mootness is not a matter which can be waived. It is the prerogative of this court to determine whether to address an issue when we are informed that the matter is no longer live or has become moot as between the parties." *Irwin R. Evens & Son, Inc. v. Bd. of Indpls. Airport Auth.*, 584 N.E.2d 576, 581 n. 3 (Ind. Ct.App.1992). Even assuming, *arguendo*, that Spencer's appeal is moot, "[i]t is beyond dispute that matters of student discipline and their impact upon the education of the children of our state are questions of great public importance." *Barnell*, 678 N.E.2d at 802. Given the unfortunate likelihood that students will continue to threaten to commit acts of armed violence in our schools, it is equally likely that similar disciplinary issues will recur. Consequently, we address the issue Spencer presents in his appeal.

Indiana Code Chapter 20–8.1–5.1 governs the suspension, expulsion, and discipline of students. Indiana Code Section 20–8.1–5.1–15 provides,

Judicial review of a governing body's action under this chapter by the circuit or superior court of the county in which a student who is the subject of the governing body's action resides is limited to the issue of whether the governing body [here, the Board] acted without following the procedure required under this chapter.

Spencer does not specifically contend that the Board acted without following the procedure required under Chapter 20–8.1–5.1. In *Barnell*, however, a panel of this court concluded that notwithstanding Indiana Code Section 20–8.1–5.1–15, "[a] reviewing court is not strictly limited to assessing the extent to which the Board's actions satisfied statutory prescribed procedures." *Barnell*, 678 N.E.2d at 804. The *Barnell* court looked to Indiana Code Section 4–

21.5–5–14 of the Administrative Orders and Procedures Act ("AOPA") and noted that "the standards set forth in the statute represent, in effect, the codification of the minimum requirements of due process[.]" *Id.* Subsection (d) of the statute provides that a reviewing court shall grant relief if a person has been prejudiced by an agency action that is

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

Ind.Code § 4–21.5–5–14(d). An administrative agency's action is arbitrary and capricious only where there is no reasonable basis for the action. *South Gibson Sch. Bd. v. Sollman*, 768 N.E.2d 437, 441 (Ind.2002). "The burden of demonstrating the invalidity of agency action is on the party to the judicial review asserting invalidity." Ind.Code § 4–21.5–5–14(a).

Indiana Code Section 20–8.1–5.1–3 delineates the duty and powers of a school corporation to supervise and discipline students in relevant part as follows:

(a) Student supervision and the desirable behavior of students in carrying out school purposes is the responsibility of a school corporation and the students of a school corporation.

(b) In all matters relating to the discipline and conduct of students, school corporation personnel stand in the relation of parents and guardians to the students of the school corporation. Therefore, school corporation personnel have the right, subject to this chapter, to

take any disciplinary action necessary to promote student conduct that conforms with an orderly and effective educational system.

Indiana Code Section 20–8.1–5.1–7(a) provides that the governing body of a school corporation (here, the Board) must establish and publicize written discipline rules for the school corporation.

Indiana Code Section 20–8.1–5.1–8 sets forth grounds for suspension or expulsion: [7]

(a) The following are the grounds for student suspension or expulsion, subject to the procedural requirements of this chapter and as stated by school corporation rules:

(1) Student misconduct.

(2) Substantial disobedience.

(b) The grounds for suspension or expulsion listed in subsection (a) apply when a student is:

(1) on school grounds immediately before or during school hours, or immediately after school hours, or at any other time when the school is being used by a school group;

(2) off school grounds at a school activity, function, or event; or

(3) traveling to or from school or a school activity, function, or event.

Spencer contends, and Appellees do not dispute, that Indiana Code Section 20–8.1–5.1–8 is inapplicable here because he did not utter his threat under any of the circumstances listed in subsection (b).

Indiana Code Section 20–8.1–5.1–9 provides:

In addition to the grounds specified in section 8 of this chapter, a student may be suspended or expelled for engaging in unlawful activity on or off school grounds if:

(1) the unlawful activity may reasonably be considered to be an interference with school purposes or an educational function; or

(2) the student's removal is necessary to restore order or protect persons on school property.

As previously mentioned, the Board concluded that Spencer's threat constituted an unlawful act of intimidation.[8] The crux of Spencer's argument before the trial court, in his appellate brief, and at oral argument is that a school does not have statutory authority to determine whether a student has engaged in unlawful activity and that the Board's determination in this case is therefore arbitrary and capricious.[9]

 Spencer contends that law enforcement officials, such as a prosecutor,

7. Indiana Code Section 20–8.1–1–11 defines "suspension" in relevant part as "any disciplinary action that does not constitute an expulsion under section 10 of this chapter, whereby a student is separated from school attendance for a period of not more than ten (10) school days." Indiana Code Section 20–8.1–1–10(a) defines "expulsion" in relevant part as "separat[ion] from school attendance for a period in excess of ten (10) school days" or "separat[ion] from school attendance for the balance of the current semester or current year unless a student is permitted to complete required examinations in order to receive credit for courses taken in the current semester or current year[.]"

8. Spencer notes that the School expelled him for violating the Corporation's student conduct rule regarding threats and intimidation, but he does not allege that the Board violated due process or otherwise erred in upholding his expulsion on different grounds. As such, we do not address his argument that "[t]he policies set out in the student handbook **are not law.**" Appellant's Br. at 15. Neither do we address the question of whether a student may be expelled solely on public policy grounds, as the Board's decision suggests.

9. As previously mentioned, a probation officer testified at the expulsion hearing that "there was nothing that [she and the sheriff's deputy] could find in the criminal code book that would classify [Spencer's threat] as an unlaw-

must determine whether a student engaged in unlawful activity. It is well settled, however, that "[n]othing may be read into [a] statute which is not within the manifest intent of the legislature as gathered from the statute itself. An unambiguous statute must be held to mean what it plainly expresses, and its plain and obvious meaning may not be expanded or restricted." *George P. Todd Funeral Home, Inc. v. Estate of Beckner,* 663 N.E.2d 786, 787 (Ind.Ct.App.1996) (citation omitted). Indiana Code Section 20–8.1–5.1–9 does not say that a prosecutor must determine whether a student engaged in unlawful activity. At oral argument, Spencer conceded that a school may determine under that statute whether a student's unlawful activity "may reasonably be considered to be an interference with school purposes or an educational function" or whether "the student's removal is necessary to restore order or protect persons on school property." *See* Ind.Code § 20–8.1–5.1–9. It would defy logic, common sense, and the

plain language of the statute to hold that a prosecutor must determine in the course of a school disciplinary proceeding whether a student engaged in unlawful activity. Spencer's argument is without merit.[10]

We acknowledge that the term "unlawful" is not defined by statute, but we need not attempt to define it here. Spencer's contention that he did not engage in unlawful activity is based on the faulty premise that a prosecutor must make this determination, rather than on a cogent argument asserting that his threat to shoot his schoolmates does not constitute unlawful activity.[11] As such, Spencer has failed to establish that the Board's decision to expel him was arbitrary and capricious.

Affirmed.

BAKER, J., and SHARPNACK, J., concur.

---

ful act." Appellant's App. at 62. Spencer characterizes the probation officer's testimony as a determination that he did not commit an unlawful act. Appellees accuse Spencer of misrepresentation, claiming that "the record shows that the officers did not know the meaning of 'unlawful' but deferred such decision to the prosecutor whom they decided not to contact in this case." Appellees' Br. at 13. Appellees' accusation is unfounded. After the probation officer made the above statement, the expulsion examiner asked if she could help him define the term "unlawful activity." Appellant's App. at 62. The probation officer responded, "I think the person who could best answer that question would be the prosecutor. He is the highest law enforcement official." *Id.* In sum, the record reflects that the probation officer did not defer the initial determination of "unlawful activity" to the prosecutor and, indeed, *could* not have done so, given that she never discussed the matter with the prosecutor in the first place.

10. Spencer's argument fails to consider that a prosecutor's decision whether to charge a

person is not conclusive of whether the person committed a criminal offense, let alone engaged in unlawful activity. At the expulsion hearing, Spencer's counsel acknowledged that a person can engage in unlawful activity and not be criminally charged, "[a]nd not because [that person is] not caught." Appellant's App. at 58.

11. Spencer baldly asserts that his threat did not "rise to the level" of either unlawful activity or intimidation, but fails to support this assertion with citations to authority as required by Indiana Appellate Rule 46(A)(8)(a). Spencer also contends that Indiana Code Section 20–8.1–5.1–9 is unconstitutionally vague as applied, but this contention is likewise based on the faulty premise that a prosecutor must determine whether a student engaged in unlawful activity. *See* Appellant's Reply Br. at 7 ("As applied here, the statute would give the school the power to determine that a criminal offense had occurred despite the contrary determination by the system in place to make such judgments.").